ANDRE BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
AMANDA M. BETTINELLI (SBN 233927)
Assistant United States Attorney
Environmental Crimes Section
    1300 United States Attorney
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0470
    Facsimile: (213) 894-0636
    Email: amanda.bettinelli@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 11-1210-ODW |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S TRIAL MEMORANDUM |
| | ) | |
| v. | ) | [18 U.S.C. § 13 Assimilating |
| | ) | California Health and Safety Code |
| DANI SMITH, | ) | § 11550(a) and California Penal |
| aka "Dani McLeod" | ) | Code § 273a(b)] |
| | ) | |
| Defendant. | ) | (Class A Misdemeanor) |
| | ) | |
| | ) | Trial Date: July 31, 2012 |
| | ) | Trial Time: 9:00 a.m. |
| | ) | Hon. Otis D. Wright, II |
| | ) | |

        Plaintiff, United States of America, by and through its

counsel of record, the United States Attorney for the Central

//

//

//

//

1

1  District of California, hereby submits its trial memorandum in

2  the above-captioned case.

3

4  DATED: July 24, 2012        Respectfully submitted,

5                              ANDRE BIROTTE JR.
                               United States Attorney
6
                               ROBERT E. DUGDALE
7                              Assistant United States Attorney
                               Chief, Criminal Division
8

9
                               _____/s/_____
10                             AMANDA M. BETTNELLI
                               Assistant United States Attorney
11                             Environmental Crimes Section

12                             Attorneys for Plaintiff
                               UNITED STATES OF AMERICA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    2

**I.**

**STATUS OF THE CASE**

A.   Trial against defendant Dani Smith ("defendant") is scheduled to begin on July 31, 2012 at 9:00 a.m.

B.   The estimated time for the government's case-in-chief is approximately three to four days.

C   The government anticipates calling approximately 12 witnesses in its case-in-chief.[1]

D.   Defendant is on bond.

E.   Defendant has not waived trial by jury.

**II.**

**STATEMENT OF FACTS**

**A.   <u>The Information</u>**

On February 24, 2012, the United States Attorney's Office filed an information ("the information") against the defendant. The information charges defendant with one assimilated count of the California Health and Safety Code for knowing use and being under the influence of a controlled substance (18 U.S.C. § 13 Assimilating Health and Safety Code § 11550(a) and two assimilated counts of child abuse or endangerment (18 U.S.C. § 13 Assimilating California Penal Code Section 273a(b)).  A copy of the information is attached.

//

//

---

[1]On July 23, 2012, defense counsel advised that defendant refused to stipulate to anything in this case, including jurisdiction, chain of custody, and document custodians.

**B.    Summary of the Case**

The government will present the following evidence during its case-in-chief:

Defendant Dani Smith committed three separate crimes, knowing use and being under the influence of a controlled substance, namely amphetamine, and two counts of child abuse or endangerment of victims K.M. and C.M.  The identity of the child victim's are represented by initials to protect their identity.  See Crime Victims Rights Act, 18 U.S.C. § 3509.

On or about November 7, 2012, defendant Smith drove her mini van up to the Vandenberg Air Force Base ("VAFB") guard gate with three minor children and one adult male passenger in the car.  Based upon defendant's irrational behavior and incoherent speech, the guard called for assistance.  Due to the cold, rainy weather, defendant and the passengers were transported to a nearby building on VAFB base.  After refusing to cooperate in a Drug Abuse Recognition Test and Field Sobriety Tests, falling to the floor and throwing herself across the room, defendant was transported to Lompoc Valley Medical Center for urine and blood tests.  Defendant tested positive for the presence of amphetamine, a controlled substance, in her system.  Subsequent laboratory tests confirmed that defendant tested positive for amphetamine.

The minor children, ages 5 (K.M.) and 10 years (C.M.), were barely clothed.  The 5 year old was wearing a thin sun dress and no shoes.  The 10 year old complained of having a fever and being sick for a few days.  C.M. had not been to a doctor.  C.M. was wearing boxer underwear and a jacket.  The 16 year old child,

1  J.O., reported that he mainly took care of the two younger

2  children because defendant plays video games most of the day.  He

3  also reported that he and the two younger children had not been

4  to school in over one month because the defendant was worried

5  about a hit being put out on their lives.

6  Because VAFB has exclusive jurisdiction, defendant was

7  charged with assimilated state offenses: California Health and

8  Safety Code Section 11550(a) using or being under the influence

9  of a controlled substance, a Class A Misdemeanor, and Penal Code

10  Section 273a(b), child abuse or endangerment, a Class B

11  Misdemeanor.  Amphetamine is a controlled substance under

12  California Health and Safety Code Section 11055(d)(1).

13  **III.**

14  **PERTINENT LAW**

15  **A.**   **18 U.S.C. § 13 Assimilating California Health and Safety**

16  **Code Section 11550(a)**

17  **1.**   **Essential Elements**

18  The elements of being under the influence of a controlled

19  substance are:

20  First, the defendant knowingly used and was under the

21  influence in any detectable manner of a controlled substance;

22  Second, the controlled substance is specified in Health and

23  Safety Case Section 11055(d)(1), in this case amphetamine.

24  Source: Statute and <u>People v. Enriquez</u>, 42 Cal. App. 4th 661, 665

25  (1996).

26  //

27  //

28  //

**B.** **18 U.S.C. § 13 Assimilating California Penal Code Section 273a(b)**

**1.** **Essential Elements**

The elements of the crime of child abuse or endangerment are:

First, the defendant, while having care or custody, willfully caused or permitted the child to be placed in a situation where the child's person or health was endangered; and

Second, the defendant was criminally negligent when she caused or permitted the child to be endangered.

Willfully: The word "willfully" as used in California Jury Instructions 16.170 Child Endangerment instruction, means with a purpose or willingness to commit the act or omission in question. The word willfully does not require any intent to violate the law, or to injure another, or to acquire any advantage. See California Jury Instructions ("CALJIC") 16.170.

A child is any person under the age of 18 years.

Criminal Negligence: refers to negligent conduct which is aggravated, reckless, flagrant and which is such a departure from the conduct of an ordinarily prudent, careful person under the same circumstances as to be contrary to proper regard for human life, danger to human life, or to constitute indifference to the consequences of that conduct. The facts must be such that consequences of the negligent conduct could reasonably have been foreseen and it must appear that death or danger to human life was not the result of inattention, mistaken judgment, or misadventure but the natural and probable result of aggravated, reckless, or flagrantly negligent conduct. See CALJIC 16.170.

6

1

# IV.

2

## EVIDENTIARY ISSUES

3

**A.    Business Records**

4

   The government will be introducing several medical records for

5

defendant, school records for the minor children, VAFB dispatch

6

records, VAFB debarment records, VAFB be on the lookout (aka "BOLO")

7

records, if available, child investigation and/or referral records

8

regarding the minor children, to Child Protection Services in Santa

9

Barbara County during its case-in-chief.   Fed. R. Evid. 803(6) excepts

10

from the hearsay rule:

11
                A memorandum, report, record, or data
                compilation, in any form, of acts, events,
12              conditions, opinions, or diagnoses, made at or
                near the time by, or from information transmitted
13              by, a person with knowledge, if kept in the
                course of a regularly conducted business
14              activity, and if it was the regular practice of
                that business activity to make the memorandum,
15              report, record, or data compilation, all as shown
                by the testimony of the custodian or other
16              qualified witness, unless the source of
                information or the method or circumstances of
17              preparation indicate lack of trustworthiness.

18

A document is admissible under this Rule if two foundational facts are

19

established: (a) the document was made or transmitted by a person with

20

knowledge at or near the time of the incident recorded, and (b) the

21

document was kept in the course of a regularly conducted business

22

activity.   See United States v. Bland, 961 F.2d 123, 127 (9th Cir.

23

1992); United States v. Ray, 930 F.2d 1368, 1370 (9th Cir. 1990).   In

24

determining if these foundational facts have been established, the

25

court may consider hearsay and other evidence not admissible at trial.

26

See Fed. R. Evid. 104(a) and 1101(d)(1); Bourjaily v. United States,

27

483 U.S. 171, 178-179 (1987).

28

7

1      Moreover, records of regularly conducted activity that would be

2   admissible under Rule 803(6) do not require extrinsic evidence of

3   authenticity as a condition precedent to admissibility if they are

4   accompanied by a written declaration of a custodian of record

5   certifying that the record (A) was made at or near the time of the

6   occurrence of the matters set forth by, or from information

7   transmitted by, a person with knowledge of those matters; (B) was kept

8   in the course of the regularly conducted activity; and (C) was made by

9   the regularly conducted activity as a regular practice.  Fed. R. Evid.

10  902(11).  The government will provide notice to defendant of the

11  business records and declarations that it intends to offer under Rule

12  902(11) in advance of trial.

13      The government need not establish precisely when or by whom

14  the document was prepared; all the rule requires is that the

15  document be made "at or near the time" of the act or event it

16  purports to record.  <u>See</u> <u>Ray</u>, 930 F.2d at 1370; <u>United States v.</u>

17  <u>Huber</u>, 772 F.2d 585, 591 (9th Cir. 1985); <u>United States v. Basey</u>,

18  613 F.2d 198, 201 n.1 (9th Cir. 1979).  Challenges to the

19  accuracy or completeness of the business records ordinarily goes

20  to the weight of the evidence and not its admissibility.  <u>See,</u>

21  <u>e.g.,</u> <u>La Porte v. United States</u>, 300 F.2d 878, 880 (9th Cir.

22  1962).  Because Rule 803(6) represents a firmly rooted hearsay

23  exception, if evidence meets the requirements for admission under

24  the Rule, no further showing of reliability is necessary for

25  admission under the Confrontation Clause.  <u>See</u> <u>United States v.</u>

26  <u>Norton</u>, 867 F.2d 1354, 1363 (11th Cir. 1989); <u>United States v.</u>

27  <u>Baker</u>, 855 F.2d 1353, 1360 (8th Cir. 1988).

28  //

8

1    **B.    Duplicates**

2        1.    A duplicate is admissible to the same extent as an

3    original unless (1) a genuine question is raised as to the

4    authenticity of the original, or (2) under the circumstances, it

5    would be unfair to admit the duplicate instead of the original.

6    Fed. R. Evid. 1003; <u>United States v. Smith</u>, 893 F.2d 1573, 1579

7    (9th Cir. 1990); <u>United States v. Leal</u>, 509 F.2d 122, 125-26 (9th

8    cir. 1975); <u>United States v. Pacheco-Lovio</u>, 463 F.2d 232, 233-34

9    (9th Cir. 1972).

10        **C.    Authentication and Identification**

11        "The requirement of authentication or identification as a

12   condition precedent to admissibility is satisfied by evidence

13   sufficient to support a finding that the matter in question is

14   what its proponent claims."  Fed. R. Evid. 901(a).

15        Rule 901(a) only requires the government to make a <u>prima

16   facie</u> showing of authenticity or identification "so that a

17   reasonable juror could find in favor of authenticity or

18   identification."  <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,

19   996 (9th Cir. 1991); <u>see also</u> <u>United States v. Blackwood</u>, 878

20   F.2d 1200, 1202 (9th Cir. 1989); <u>United States v. Black</u>, 767 F.2d

21   1334, 1342 (9th Cir. 1985). Once the government meets this

22   burden, "the credibility or probative force of the evidence

23   offered is, ultimately, an issue for the jury." <u>Black</u>, 767 F.2d

24   at 1342.  Domestic public documents under seal or certified

25   copies of public records do not require extrinsic evidence of

26   authenticity as a condition precedent to admissibility.  Fed. R.

27   Evid. 902.

28   //

### D.   **Routine Practice**

Evidence of the routine practice of an organization, when corroborated or not, and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the organization on a particular occasion was in conformity with routine practice.  Fed. R. Evid. 406.

### E.   **Cross-Examination**

The scope of a cross-examination is within the discretion of the trial court.  Fed. R. Evid. 611(b).  Cross-examination should, however, be limited to the subject matter of the direct examination and matters affecting the credibility of the witness.  The court may, in the exercise of its discretion, permit inquiry into additional matters as if on direct examination.  Fed. R. Evid. 611(b).  A defendant who testifies at trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination.  A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).  A defendant who testifies at trial waives his Fifth Amendment privilege and may be cross-examined on matters made relevant by his direct testimony.  Black, 767 F.2d at 1341.  The scope of the defendant's waiver is co-extensive with the scope of relevant cross-examination.  The extent of the waiver is determined by whether the question reasonably relates to subjects covered by defendant's direct testimony.  United States v. Hearst, 563 F.2d 1331, 1340 (9th Cir. 1977).

//

Federal Rule of Evidence 608(b) provides that:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative or truthfulness or untruthfulness, be inquired into on cross-examination of a witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified. . . .

Fed. R. Evid. 608(b).

Defendant's credibility will be crucial if she chooses to testify in order to refute the government's showing of defendant willfully committing the acts alleged in counts one, two, and three of the information.  Indeed, because defendant is the only witness with "direct" evidence of her own knowledge and intent, if she takes the stand to deny her purpose or willingness to commit the offense conduct, her credibility becomes a key issue.  Accordingly, cross-examination of defendant about other o conduct in which she has engaged is necessary for the jury to weigh whether defendant's denial of her purpose or willingness to commit the offense conduct, namely willful use or being under the influence of a controlled substance or to endanger a child is credible given her other actions.  As the Ninth Circuit has held, Rule 608(b):

> specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility.

<u>Gay</u>, 967 F.2d at 328.

Moreover, the prejudicial effect of such evidence, if any, can be addressed by a limiting instruction.  Unfair prejudice "means an undue tendency to suggest decision on an improper

1    basis, commonly, though not necessarily, an emotional one."
2    Federal Rule of Evidence 403 Advisory Committee Note.  Thus,
3    admission of evidence regarding the defendant's other fraudulent
4    acts might constitute unfair prejudice if the jury in this case
5    considered the evidence to establish defendant's propensity to
6    commit the charged crime.  However, this potential unfair
7    prejudice can be cured by a limiting instruction that the jury
8    should consider the evidence only for the purpose for which it is
9    introduced.  <u>United States v. Hadley</u>, 918 F.2d at 852;
10   <u>United States v. Boise</u>, 916 F.2d 497, 501 (9th Cir. 1990).

11        **F. <u>Child Victim Witnesses</u>**

12        The government objects to live in-court testimony of the
13   child victim witnesses in this case.  The government has filed
14   briefing on this issue, included declarations by the Guardian Ad
15   Litem appointed in this case, as well as the therapists providing
16   services to the children.  <u>See</u> Docket entries 31-35.  The
17   government advised the court of alternatives to live-in court
18   testimony, including closed circuit television or the use of
19   video-taped depositions, and provided case law in the Ninth
20   Circuit at the status conference on Monday, July 23, 2012.  A
21   motions hearing on this issue is set for Friday, July 27, 2012.

22        **G.  <u>Character Witnesses</u>**

23        As a general rule, character witnesses called by the
24   defendant may not testify about specific acts demonstrating a
25   particular trait or other information acquired only by personal
26   observation and interaction with the defendant; the witness must
27   be limited to summarizing the reputation of the defendant as
28   known in the community.  <u>Michelson v. United States</u>, 335 U.S.

469, 477 (1948).   On cross-examination of a defendant's character
witness, the government may inquire into specific instances of
defendant's past conduct relevant to the character trait at
issue.   Fed. R. Evid. 405(a).   In particular, a defendant's
character witnesses may be cross-examined about their knowledge
of the defendant's past crimes, wrongful acts, and arrests.
<u>Michelson</u>, 335 U.S. at 477.

### H.    Reciprocal Discovery

Despite a request by the government, defendant has failed to
produce any reciprocal discovery to which the Government may be
entitled under Rules 16(b) and 26.2 of the Federal Rules of
Criminal Procedure.   Therefore, to the extent defendant may
attempt to introduce or use any documents at trial that she has
not produced, the Government reserves the right to object and to
seek to have such documents precluded.

### H.    Affirmative Defenses

Despite a request by the government, defendant has not given
notice of her intent to rely on any defense of mental incapacity,
insanity at the time of the offense, duress or alibi.   Defendant
has also not given notice of her intent to rely on any defense of
entrapment.   Therefore, to the extent defendant may attempt to
rely on any such defenses, the Government reserves the right to
object and to seek to have defendant precluded from asserting
such defenses.

On June 11, 2012, a Competency Hearing was held and
defendant was found competent to stand trial.   <u>See</u> Psychological

Report prepared by Dr. Gordon Zilberman (Bureau of Prisons) and Minutes of Competency Hearing at docket entry 30.

An affirmative defense of insanity at the time of the offense has not been noticed by defendant.  If defendant were to raise this affirmative defense, defendant would have to be evaluated and a psychological evaluation and report would have to be prepared by an expert.  If defendant were to assert an affirmative defense based on insanity at the time of the offense, the government would move to preclude it on the following grounds:  1) no notice, 2) no expert report, and 3) no basis for any such of affirmative defense in the record.

## I.   Discovery

The government has advised the Court and defense counsel of the 827 Petition filed in Dependency Court requesting copies of the transcripts of the dependency proceedings pertaining to the termination of parental rights of defendant.  The government has advised the court of the procedural hurdles and confidentiality rules that have hindered the parties abilities to obtain immediate access to the transcripts, which may include prior statements of the defendant and other government witnesses, including Sr. Airman Aceves and others.

Finally, the government has advised defendant of outstanding discovery that was brought to the government's attention while conducting witness interviews for trial.  One of the allegations pertains to excessive force by VAFB security personnel. The government has requested all documentation pertaining to such allegations and recordings.  If defense counsel needs additional

time to prepare and to review this discovery, the government does not object to a brief continuance to allow for that review.

**VI.**

**CONCLUSION**

The government requests leave to file such additional memoranda as may become appropriate during the course of the trial.